ROGERS, Circuit Judge,
concurring: I concur in granting the petition and remanding the case to the Board to evaluate the evidence and draw reasonable inferences therefrom.
The Board misinterpreted Auciello Iron Works, Inc. v. NLRB, 517 U.S. 781, 116 S.Ct. 1754, 135 L.Ed.2d 64 (1996), to bar reliance by an employer on pre-contract evidence, after the contract has expired, in asserting that it had a good-faith reasonable uncertainty as to the union’s continuing majority status at the time it withdrew recognition. Auciello was decided in the context of two irrebuttable presumptions adopted by the Board to foster industrial peace and stability under the National Labor Relations Act. Id. at 786, 116 S.Ct. at 1758. Those presumptions of union majority status for one year after union certification and during the term of the parties’ contract, up to three years, were based, the Court noted, “ ‘not so much on an absolute certainty that the union’s majority status will not erode,’ ... as on the need to achieve ‘stability in collective-bargaining relationships.’ ” Id. (quoting Fall River Dyeing & Finishing Corp. v. NLRB, 482 U.S. 27, 38, 107 S.Ct. 2225, 2233, 96 L.Ed.2d 22 (1987)). The Court held that the Board’s judgment declining to create an exception during the term of the contract for the benefit of the employer with doubts based on facts antedating the contract was “entitled to prevail.” Id. at 787, 116 S.Ct. at 1759. The Court observed:
The Board could reasonably say that giving employers some flexibility in raising their scruples would not be worth skewing bargaining relationships by such one-sided leverage, and the fact that any collective-bargaining agreement might be vulnerable to such a postfor-mation challenge would hardly serve the Act’s goal of achieving industrial peace *1009 by promoting stable collective-bargaining relationships.
Id. at 790, 116 S.Ct. at 1760.
At issue here is a rebuttable presumption of majority status upon expiration of a collective-bargaining agreement. The court states that nothing in the rationale underlying the conclusive presumption addressed in Auciello “bars employers from relying on pre-contract evidence” once the contract has expired. Op. at 1006. The Union, as Intervenor, suggests, however, that “[t]he same policy considerations” underlying Auciello apply here:
Allowing an employer with genuine doubt about a union’s majority support to bargain, reach agreement, enjoy the benefits of having reached agreement for three years, and then raise three-year old doubt ... in the context of bargaining for a successor agreement would clearly undermine the stability of collective bargaining relationships.
Intervenor’s Br. at 4. Pointing to an element of repose, the Board notes in its brief that when an employer chooses “to swallow its nascent doubt, it deprives the union of the opportunity to explain or counter the pre-contract evidence while the evidence is fresh, or to react by shoring up support.” Respondent’s Br. at 38. Indeed, in Auciello the Supreme Court rejected the employer’s attempt to raise a reasonable doubt in light of the Board’s judgment that “the risks associated with giving employers such ‘unilateral!] control [over] a vital part of the collective-bargaining process’ ... would undermine the stability of the collective-bargaining relationship ... and thus outweigh any benefit that might in theory follow from vindicating a doubt that ultimately proved to be sound” was “entitled to prevail.” Auciello, 517 U.S. at 787, 116 S.Ct. at 1759 (quoting Auciello Iron Works, Inc., 317 N.L.R.B. 364, 370, 374, 1995 WL 291061 (1995)).
Although the Board’s brief suggests that two Members of the Board may consider the policy concern about industrial peace under the Act, and in particular the balance of bargaining power between employer and the union, reflected in Auciello to be relevant in determining when the employer may rely on the requisite uncertainty, the Board’s majority decision did not articulate the rationale suggested in its brief or the Intervenor’s brief. Instead two Members of the Board treated the pre-contract evidence as “moot,” McDonald Partners, Inc., 336 N.L.R.B. No. 74, at 9, 2001 WL 1261811 (Oct. 1, 2001), viewing Auciello to create an evidentiary bar that extended after the contract expired. Id.
Because the misinterpretation of Auciello affects the entirety of the Board’s decision, the decision must be remanded. The Board properly invoked the uncertainty test of Allentown Mack Sales & Service, Inc. v. NLRB, 522 U.S. 359, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998), in affirming the reasons given by the Administrative Law Judge'(“ALJ”) for concluding that the employer’s remaining evidence of uncertainty was insufficient. After evaluating some of the evidence relied on by the employer as “unavailing” or “of little significance,” McDonald Partners, 336 N.L.R.B. at 9, the ALJ concluded that the evidence of the employees’ failure to join the union or pay dues through employer wage deductions, the employer’s loss of the “bug,” and a steward’s statement about employee unhappiness with the union during the contract term, was “stale and unreliable,” assuming the evidence to be relevant under Allentown Mack. Id. at 10. Explaining this conclusion, the ALJ referred not simply to the age of the evidence, see Op. at 1008, but to the union merger and employee turnover in addition to the passage of two to three years. McDonald Partners, 336 N.L.R.B. at 10. However, because *1010 there was evidence relied on by the employer, such as other statements by the stewards and information obtained by the employer about employee unhappiness with the union, that the ALJ did not consider, based on an erroneous view of Auciello, a remand is required in the absence of an explanation of why pre-contract evidence either could not be considered in light of the concern about industrial peace or the balance of bargaining power, or was not probative or was stale.
The court, after recognizing that “the Board [is] to evaluate the evidence and to weigh it along with the other evidence,” Op. at 1007, proceeds to discuss the evidence, in particular the “sharp decline in [dues] checkoffs,” id., and the lack of union membership. Id. at 1008. Indeed, the court draws several inferences of its own from that evidence, stating that “[t]he natural inference is that the decline [in dues checkoffs] reflected a loss of union support,” id. at 1007 and “[t]he evidence was as fresh as could be,” and “it was current.” Id. at 1007-1008. Still, the court’s opinion cannot be read to restrict the Board’s evaluation of the evidence on remand. Pointing to the Board’s (ALJ’s) “flat dismissal of the evidence,” id. at 1007, the court instructs the Board, upon reconsideration, to evaluate the evidence as “ ‘a matter of logic and sound inference from all the circumstances .’” Id. (quoting Allentown Mack, 522 U.S. at 379, 118 S.Ct. at 829). This is consistent with the “considerable deference” due to the Board, which Congress has established to set labor policy under the Act. See Auciello, 517 U.S. at 787-88, 116 S.Ct. at 1758-59 (quoting NLRB v. Curtin Matheson Scientific, Inc., 494 U.S. 775, 786, 110 S.Ct. 1542, 1549, 108 L.Ed.2d 801 (1990)).
Without prejudging the Board’s decision on remand, it is evident from the Board Chairman’s separate opinion that on remand, in light of Board precedent on dues checkoff evidence[1] and stale evidence,[2] the Board could reach the same ultimate conclusion about the sufficiency of the employer’s evidence to rebut the presumption of continuing majority status of the union. The Chairman rejected the interpretation of Auciello adopted by two Members of the Board and concluded that the pre-contract and during-contract evidence could not be relied upon by the employer because it was stale; “the evidence of employee disaffection is not close in time to the withdrawal of recognition, as required by precedent.” McDonald Partners, 336 N.L.R.B. at 3 (Hurtgen, Chairman, dissenting in part) (citing Curtin Matheson, 494 U.S. at 778, 110 S.Ct. at 1544-45). Although the court professes that it is “baffled by the ALJ’s description of the [dues checkoff] evidence as ‘stale,’ ” Op. at 1007, the record evidence showed that the absence of dues checkoffs was old news; the employer had declined to acknowledge checkoffs prior to the 1995 contract and the authorizations were optional under the 1995-98 contract. In the meantime, as the *1011 ALJ noted, several years had passed, the Union had merged, and there had been employee turnover at the company. So viewed, the lack of union dues checkoffs was not “fresh” or “current” evidence “close in time” to the employer’s withdrawal of recognition.
The Board’s discussion in other cases of free riders and other explanations for the lack of voluntary dues checkoffs, as under the 1995-98 contract, supports the Chairman’s analysis. See supra n. 1. Whether a majority of the Board adopts that analysis on remand remains to be seen. Moreover, other Board policies may be implicated, Intervenor suggests, see Intervenor Br. at 5, by allowing employer reliance on dues checkoff evidence such that doing so would give the employer greater rights to oust the union than are possessed by the employees, for “[generally, the Board does not rely on employees’ signatures on a petition seeking representation or seeking to oust a representative that are more than one year old.” Id. (citing Audubon Reg’l Med. Ctr., 331 N.L.R.B. No. 42, 2000 WL 856016, at *79 (June 22, 2000); Aircap Mfrs., 287 N.L.R.B. 996, 1033, 1988 WL 213618 (1988)). On remand the Board can evaluate the employer’s evidence, absent the Auciello error, in light of such Board policies as may be implicated.

. See, e.g., S. Bent & Bros., 336 N.L.R.B. No. 72, 2001 WL 1261817, at *2 & *18 (Oct. 1, 2001); Metro Health, Inc., 334 N.L.R.B. No. 75, 2001 WL 814951, at *2 (July 16, 2001); Henry Bierce Co., 328 N.L.R.B. 646, 648, 1999 WL 33495257 (1999); Pioneer Press, 297 N.L.R.B. 972, 992 (1990); Imperial House Condo., Inc., 279 N.L.R.B. 1225, 1225, 1237, 1986 WL 53886 (1986); Acl Corp., 278 N.L.R.B. 474, 480, 1986 WL 54130 (1986); Louis Pappas’ Homosassa Springs Rest., Inc., 275 N.L.R.B. 1519, 1527, 1985 WL 45613 (1985); Bartenders, Hotel, Motel and Rest. Employers Bargaining Ass’n, 213 N.L.R.B. 651, 652, 659 & n. 6, 1974 WL 5378 (1974).

. See, e.g., Curtin Matheson, 494 U.S. at 778, 110 S.Ct. at 1544-45; Nova Plumbing, Inc., 336 N.L.R.B. No. 61, 2001 WL 1216968, at *7 (Sept. 30, 2001); Metro Health, 334 N.L.R.B. No. 75, 2001 WL 814951, at *3; Manna Pro Partners, L.P., 304 N.L.R.B. 782, 782, 1991 WL 181861 (1991).